## KNIGHTS OF COLUMBUS FEDERAL CREDIT UNION
## *v.* DAVID L. SALISBURY
## (2050)

DUPONT, C.P.J., SPALLONE and DALY, Js.

Argued October 10, 1984—decision released January 22, 1985

*David L. Salisbury,* pro se, the appellant (defendant).

*Eugene S. Melchionne,* for the appellee (plaintiff).

DUPONT, C.P.J. This is an action to recover the balance due on an installment promissory note. The matter was tried to the court, and the judgment rendered in favor of the plaintiff is the subject of this appeal.[1]

On appeal, the defendant claims that the trial court erred (1) in failing to grant his motion to dismiss, (2)

---

[1] This appeal was originally filed in the Appellate Session of the Superior Court. General Statutes § 51-197a (c).

in striking several of his various special defenses, (3) in sustaining the plaintiff's objection to his discovery requests, and (4) in concluding that the plaintiff did not wilfully violate the disclosure provisions of General Statutes (Rev. to 1977) § 42-87.[2]

## I

The defendant first claims that the trial court erred in not dismissing the present action. He contends that the trial court had neither personal jurisdiction nor subject matter jurisdiction because the plaintiff's attorney had previously represented the defendant.

The claim of a lack of personal jurisdiction is as close to meritless as it is possible to get. The defendant is a resident of the state, abode service was made upon him and the jurisdiction of the court over him is obvious. *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 51–52, 459 A.2d 503 (1983). The claim of a lack of subject matter jurisdiction is equally virtueless. Subject matter jurisdiction refers to whether the court has competence to entertain the action before it. *Meinket* v. *Levinson,* 193 Conn. 110, 115, 474 A.2d 454 (1984). General Statutes § 51-164s provides that the Superior Court shall be the sole court of original jurisdiction for all causes of action except actions over which the courts of probate have original jurisdiction.

Authorities cited by the defendant from other jurisdictions, which address the claim of whether a prior attorney-client relationship between the defendant and the plaintiff's attorney subject a complaint to dismissal, are inapposite. *Doe* v. *A. Corporation,* 330 F. Sup. 1352

---

[2] Ten other claims of error were raised by the pro se defendant. A discussion of them is not merited except to note that it was not error to award damages in excess of the plaintiff's original demand for relief since it had amended that demand within the time provided in Practice Book § 175 for amendment, as of right. Many different trial judges participated in the claimed errors.

(S.D.N.Y. 1971), aff'd, sub nom. *Hall* v. *A. Corporation,* 453 F.2d 1375 (2d Cir. 1972), and *Slater* v. *Rimar, Inc.,* 462 Pa. 138, 338 A.2d 584 (1975), considered the issue of dismissal pursuant to the court's supervisory powers over litigation and the conduct of attorneys. Cf. Practice Book § 231. Furthermore, the cases were dismissed without prejudice, unlike the dismissal sought here.

The record reveals that this motion was also considered, more appropriately, as a motion to disqualify the plaintiff's attorney.[3] The defendant asserts that the trial court erred in failing to provide him with an evidentiary hearing on the matter. Alternatively, he contends that the trial court should have granted his motion on the basis of his affidavit and of the supporting documentation submitted.

The defendant informed the trial court that he wanted an evidentiary hearing on the matter by filing, in accordance with Practice Book § 211, a request for oral argument and an opportunity to present testimony. When the matter came before the trial court, however, he stated that no testimony was necessary. Thus, he waived his claim to an evidentiary hearing.

Notwithstanding that fact, the defendant argues that the court, sua sponte, should have conducted an evidentiary hearing. The defendant mistakenly relies on *Garden Mutual Benefit Assn.* v. *Levy,* 37 Conn. Sup. 790, 437 A.2d 141 (1981), to support that proposition. That case held that where affidavits filed by both parties disclosed the presence of issues of fact in connection with a motion to dismiss, an evidentiary hearing must be conducted. A factual dispute triggers the hearing requirement. The plaintiff's attorney here submitted no counter affidavits and the facts were not disputed

---

[3] The defendant, at oral argument in the trial court on his motion to dismiss, characterized the motion as both a motion to dismiss and a motion to disqualify.

since the plaintiff's attorney agreed that he had represented the defendant in two instances prior to the present litigation. Rather, the plaintiff's attorney contested the legal consequences of those facts. Under these circumstances, there was no error in the trial court's failure to hold an evidentiary hearing.

The defendant further asserts that the evidence before the court established that the plaintiff's attorney represented the defendant on matters which were patently related to the matter in issue.

The affidavit and documentation submitted by the defendant revealed that the prior representation of the defendant by the plaintiff's attorney involved a lawsuit brought on behalf of the defendant and many other employees against the defendant's employer in connection with a 1973 labor dispute and a lawsuit brought to recover for damage to an automobile owned by the defendant. As a result of this prior representation, the defendant claims that the plaintiff's attorney became conversant with his finances. An examination of the record supports the conclusion that the latter assertion is the crux of the defendant's claim. To support his disqualification claim, the defendant directs the court's attention to Canon 4 of the Code of Professional Responsibility, which provides that "A Lawyer Should Preserve the Confidences and Secrets of a Client," and Canon 9, which provides that "A Lawyer Should Avoid Even the Appearance of Professional Impropriety."

Three competing interests are at stake in a motion to disqualify. They are the defendant's interest in protecting confidential information from disclosure to the plaintiff, the plaintiff's interest in freely selecting counsel of its choice, and "the public's interest in the scrupulous administration of justice." *Goldenberg* v. *Corporate Air, Inc.,* 189 Conn. 504, 507, 457 A.2d 296 (1983). In deciding whether disqualification is neces-

sary because of representation adverse to a former client, the interest of a party in freely selecting counsel has outweighed the expectations of a former client as to the scope of the attorney-client relationship unless "the relationship between the issues in the prior and present cases is 'patently clear' or . . . the issues are 'identical' or 'essentially the same.' *Government of India* v. *Cook Industries, Inc.,* 569 F.2d 737, 739–40 (2d Cir. 1978)." *State* v. *Jones,* 180 Conn. 443, 449, 429 A.2d 936 (1980).

The trial court's balancing of these interests is subject to reversal only if an abuse of discretion is manifest or injustice appears to have been done. *Goldenberg* v. *Corporate Air, Inc.,* supra, 508. Further, an appellate court must accord every reasonable presumption in favor of the trial court's decision. *State* v. *Jones,* supra, 448.

The defendant here was last represented by the plaintiff's attorney in 1976, and the present action was filed in 1980. The length of time which elapses between the claimed adverse representations is another factor to be considered in determining whether the trial court has committed reversible error. *Mailer* v. *Mailer,* 390 Mass. 371, 455 N.E.2d 1211 (1983). The two prior matters, one a labor dispute and the other a property damage claim, and the present action to recover the balance due on a note raise distinct issues.[4] Measuring the

---

[4] Another case cited by the defendant, *Canadian Gulf Lines, Inc.* v. *Triton International Carriers, Ltd.,* 434 F. Sup. 691 (D. Conn. 1976), is distinguishable. That case was decided prior to the honing of the substantial relationship test by the second circuit in *Government of India* v. *Cook Industries, Inc.,* 569 F.2d 737, 739–40 (2d Cir. 1978). Further, the former case involved a motion to disqualify filed by the garnishee. In garnishment proceedings, the indebtedness of the garnishee to the defendant-debtor is in issue. 6 Am. Jur. 2d, Attachment and Garnishment § 331. Lastly, the disqualification was justified largely, if not solely, upon the avoidance of the appearance of impropriety. The Second Circuit subsequently rejected the idea that an attorney be disqualified solely on that ground. *Board of Education* v. *Nyquist,* 590 F.2d 1241, 1247 (2d Cir. 1979).

attorney-client relationship by the allegations in the complaint and the evidence admissible thereunder, the prior matters bear no relationship to the present action sufficient to disqualify the plaintiff's attorney. *Trone* v. *Smith*, 621 F.2d 994, 1000 (9th Cir. 1980).

## II

The second claim of the defendant is that the trial court erred in striking his special defense alleging usury. Several prior versions of this special defense were stricken, and the special defense now in issue is the same, with augmented detail. Only the final version of the special defense need be considered. *Nowak* v. *Nowak*, 175 Conn. 112, 122–23, 394 A.2d 716 (1978). Paragraph six of that special defense provided: "Said note as shown in plaintiff's Exhibit 'A,' was accepted by the plaintiff for an amount greater than that actually loaned, with the intent to evade the provisions of . . . 12 U.S.C. § 1757 . . . ."[5] On the basis of that assertion, the defendant argues that the trial court could not simply compare, as it did, the interest rate provided in the note and the interest rate ceiling established in the applicable federal statute.

The factual accuracy of the pleading is assumed.[6] The question becomes whether such a loan violates 12 U.S.C. § 1757 and thereby bars the plaintiff from collecting any interest on the loan.[7] *Brooklyn Jenapo Fed-*

[5] 12 U.S.C. § 1757 (1982), which outlines the federal credit union's powers, provides, in subsection (5) (A) (vi): "the rate of interest may not exceed 15 per centum per annum on the unpaid balance inclusive of all finance charges . . . ." At the time the parties entered into the loan agreement, the applicable rate of interest was 1 per centum per month.

[6] A motion to strike challenges the legal sufficiency of the pleading. Practice Book § 152. For the purposes of this appeal, we assume the allegations of the special defense are true. *Blake* v. *Levy*, 191 Conn. 257, 258 n.1, 464 A.2d 52 (1983).

[7] 12 U.S.C. § 1757 (5) (A) (vii) (Sup. I 1977 & 1982) provides: "the taking, receiving, reserving, or charging of a rate of interest greater than is allowed by this paragraph, when knowingly done, shall be deemed a for-

*eral Credit Union* v. *Schucher,* 41 Misc. 2d 368, 245 N.Y.S.2d 637 (1963), considered whether the requirement that a borrower purchase shares in the federal credit union as a condition of obtaining the loan raised the effective interest rate of the loan and thereby violated 12 U.S.C. § 1757 (5) (Sup. IV 1962). In denying the plaintiff's motion for summary judgment, that court held that this defense presented a triable issue of fact.

Furthermore, the Bank Act has a provision, 12 U.S.C. 86,[8] which is virtually in haec verba with 12 U.S.C. § 1757 (5) (a) (vii). Each provision serves the identical purpose of prohibiting the extraction of a usurious interest rate by the lender. It is appropriate, therefore, to examine the case law interpreting the former provision. *Oscar Mayer & Co.* v. *Evans,* 441 U.S. 750, 756, 99 S. Ct. 2066, 60 L. Ed. 2d 609 (1979); 2A Sutherland, Statutory Construction (4th Ed. 1984) § 51.03, p. 468. In *American Timber & Trading* v. *First National Bank of Oregon,* 690 F.2d 781 (9th Cir. 1982), the Ninth Circuit held that a compensating balance requirement reduced the net loan principal and thereby increased the effective interest rate charged to a usurious interest rate.

---

feiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back from the credit union taking or receiving the same, in an action in the nature of an action of debt, the entire amount of interest paid; but such action must be commenced within two years from the time the usurious collection was made . . . ."

[8] "12 U.S.C. § 86. USURIOUS INTEREST; PENALTY FOR TAKING; LIMITATIONS. "The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided,* that such action is commenced within two years from the time the usurious transaction occurred."

These cases indicate that the substance of the transaction rather than its form determines whether the loan is usurious. See also *Hershey* v. *Anderson,* 32 F. Sup. 1019 (D. Ky. 1940), aff'd, 127 F.2d 884 (6th Cir. 1942); annot., 92 A.L.R.3d 769; 45 Am. Jur. 2d, Interest and Usury § 112. The special defense in the present case, therefore, was legally sufficient and the trial court erred in striking it.

The defendant also claims that the trial court erred in striking his special defense alleging that the loan was unconscionable. Only the final version of this special defense is reviewed. *Nowak* v. *Nowak,* supra. The trial court in the present case held that the defendant did not allege sufficient facts in support of this special defense. The defendant's special defense alleged he received less than the sum specified in the note and thus the effective interest rate was raised above that allowed by the applicable federal statute. In addition, the special defense alleged that the loan failed to comply in specific ways with the disclosure requirements of General Statutes (Rev. to 1977) § 42-87.[9]

[9] General Statutes (Rev. to 1977) § 42-87 provides as follows: "Every instalment loan contract shall be in writing executed by the retail buyer and a copy thereof shall be delivered to such retail buyer at the time of the execution thereof. Such instalment loan contract shall disclose each of the following items, to the extent applicable: (1) The amount of credit of which the retail buyer will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf; (2) all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge; (3) the total amount to be financed, that is, the sum of the amounts referred to in subdivision (1) and the amounts referred to in subdivision (2); (4) the amount of the finance charge; (5) the finance charge expressed as an annual percentage rate except in the case of a finance charge (A) which does not exceed five dollars and is applicable to an instalment loan not exceeding seventy-five dollars, or (B) which does not exceed seven dollars and fifty cents and is applicable to an instalment loan exceeding seventy-five dollars. A retail seller may not divide an extension of credit into two or more transactions to avoid the disclosure of an annual percentage rate pursuant to this subdivision; (6) the number, amount and due dates or periods of payments scheduled to repay the indebtedness; (7) the default, delinquency or similar charges

"The prohibition against usury is based on the principle that it is unconscionable to charge excessive interest on loans of money to those who are forced by necessity to borrow it." *Scientific Products* v. *Cyto Medical Laboratory, Inc.,* 457 F. Sup. 1373, 1379 (D. Conn. 1978). Our courts have held that a defense based on the loan being unconscionable due to the interest rate provided for in the note is permissible. *Hamm* v. *Taylor,* 180 Conn. 491, 495, 429 A.2d 946 (1980); *Iamartino* v. *Avallone,* 2 Conn. App. 119, 124–26, 477 A.2d 124 (1984). Here, the defendant pleaded sufficient facts to withstand a motion to strike directed at this special defense.

### III

The defendant claims that the trial court erred in sustaining the plaintiff's objections to his discovery requests. Although the defendant assigned error to the sustaining of each and every one of the plaintiff's objections, he only pursued, in his brief, the claim that the trial court erred in sustaining the objections to interrogatories concerning previous loans between the plaintiff and the defendant. Any other claimed error is deemed abandoned. *Katz* v. *Brandon,* 156 Conn. 521, 524, 245 A.2d 579 (1968). The defendant correctly argues that the information concerning other loans

payable in the event of late payments; (8) a description of any security interest held or to be retained or acquired by the retail seller in connection with the extension of credit, and a clear identification of the property to which the security interest relates. Within fifteen days after the execution of such instalment loan contract, the holder thereof shall send or cause to be sent to the retail buyer a policy or policies or certificates of insurance clearly setting forth the amount of the premium, the kind or kinds of insurance and the scope of the coverage and all of the terms, exceptions, limitations, restrictions and conditions of the contract or contracts of the insurance."

In 1977, the General Assembly deleted the disclosure requirements from the statute and replaced them by requiring that agreements pursuant to this chapter comply with the disclosure requirements set forth in Chapter 657. That amendment, however, did not become effective until the following October. General Statutes § 2-32. Thus, these disclosure requirements were still in force at the time the loan agreement was executed.

between the parties should have been discoverable because one of his special defenses alleges that the loan in question was a rewriting and refinancing of previous loans. This information, therefore, would assist the defendant in the preparation of his usury defense.

"The granting or denial of a discovery request rests in the sound discretion of the court. *Kiessling* v. *Kiessling,* 134 Conn. 564, 568, 59 A.2d 532 (1948)." *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 57, 459 A.2d 503 (1983). That discretion, however, is limited, and it is an abuse of discretion to deny the disclosure of information which would be of assistance in the prosecution or defense of the actions. Practice Book § 218; *Standard Tallow Corporation* v. *Jowdy,* supra, 58–59. The defendant's special defense of usury was erroneously stricken and this information would have been of assistance in presenting that defense. Therefore, the plaintiff's objections to this discovery request should have been overruled.

## IV

The final claim of error advanced by the defendant involves the pertinence of General Statutes § 42-99 as the applicable penalty statute for violating the disclosure provisions of General Statutes (Rev. to 1977) § 42-87. That statute had previously been amended by Public Acts 1969, No. 454, § 32, which provided that disclosure violations were subject to the penalty provisions of General Statutes § 36-407. Thus, the parties' discussion of the meaning of "wilful" in General Statutes § 42-99 is simply irrelevant. There is, therefore, *no need to review the trial court's ruling.*

There is error, the judgment for the plaintiff is set aside and the case is remanded for further proceedings in accordance with this opinion.[10]

In this opinion the other judges concurred.

---

[10] Prior to oral argument, the defendant informed the court that he had filed a petition in bankruptcy and requested that this appeal be stayed pursuant to § 362 (a) (1) of the Bankruptcy Code. 11 U.S.C. § 362 (a) (1).

The pertinent portion of that statute provides: "(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title or an application filed under section 5 (a) (3) of the Securities Investor Protection Act of 1970 (15 USC 78eee (a) (3)) operates as a stay, applicable to all entities, of

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

We agree with the Appeals Court of Massachusetts that an appeal filed by the debtor is not a judicial proceeding against the debtor and, therefore, the petition in bankruptcy does not stay the present appeal. *Marine Midland Bank* v. *Herriott,* 10 Mass. App. 743, 412 N.E.2d 908 (1980); accord *Shop in the Grove* v. *Union Federal Savings & Loan Assn.,* 425 So. 2d 1138 (Fla. Dist. Ct. App. 1982); *Accredited Associates, Inc.* v. *Shottenfeld,* 162 Ga. App. 575, 292 S.E.2d 417 (1982). Since this case must be remanded for further proceedings in accordance with this opinion, the question remains as to whether any further proceedings in this matter by the trial court are stayed by the provisions of the Bankruptcy Code, 11 U.S.C. § 362 (a) (1). When a judgment is set aside, the parties return to the status they had prior to the rendering of the judgment. *Wendland* v. *Ridgefield Construction Services, Inc.,* 190 Conn. 791, 796–97, 462 A.2d 1043 (1983); Maltbie, Conn. App. Proc. § 345. On remand, the judicial proceeding will be an action against the debtor and consequently the proceedings will be stayed. Cf. *Cathey* v. *Johns-Manville Sales Corporation,* 711 F.2d 60, 62 (6th Cir. 1983).