[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFFS' MOTION FOR "DEFAULT/DISQUALIFICATION/PRECLUSION"
The plaintiffs' motion was filed during jury selection in an action brought by them on a claimed breach of the contract provisions in a homeowners' insurance policy issued by the defendant carrier. The plaintiffs claim damages arising out of two fires in their home in February and July 1989, and also claim damages for bad faith and CUTPA/CUIPA violations in the adjustment of the losses by the defendant carrier and Nygren Nygren, the defendant adjusting firm (defendants). The defendants have filed special defenses essentially alleging that the plaintiffs misrepresented material facts and made materially false statements. The defendants further allege that the plaintiff Donald Chapman engaged in fraudulent conduct and misrepresented material facts as to the cause and origin of the second fire, and as to the number of times he has been arrested and been the subject of sexual misconduct charges.
On the fifth day of jury selection, none of which Mr. Chapman attended, plaintiffs' counsel filed this motion for disqualification of the Robinson Cole law firm and/or for other relief. The trial judge suspended jury selection and this court heard evidence. The parties filed pre- and post-hearing briefs.
 I.
On the basis of the evidence, the court finds the following facts. The plaintiff Donald Chapman was arrested for a sexual assault charge in 1987 involving a minor. On November 25, 1987, he consulted with Attorney James Wade, a partner in the law firm of Robinson Cole at its Hartford office with regard to representation on the criminal charge. He brought his employee, Ms. Cheryl Kunde, with him, an aunt of the alleged victim, who showed Wade some notes of interviews Kunde had had with possible witnesses. Kunde later provided a letter relating to the character of Chapman and the alleged victim in an accelerated rehabilitation CT Page 11396 proceeding in 1988. Defendants' Exhibit 1. Wade consulted with Mr. Chapman alone, talked to Kunde alone and met with both Chapman and Kunde together. The total time involved in these interviews was about two hours. Wade then, by letter, offered to represent Chapman on the criminal charge, provided that Chapman advance a $10,000 retainer toward Wade's fee and $2,500 toward investigative and other expenses. By telephone a few days later, Chapman advised Wade that he would not retain him, and Chapman engaged other counsel. Wade, in the meantime, telephoned a private investigator to learn whether she had a conflict in assisting him in the matter and whether she was available to undertake the assignment. He did not do any other legal work on behalf of Chapman and did not bill him for the consultation, nor did he meet with him or talk with him again on the matter.
The plaintiffs assert that on the basis of Chapman's consultation with Wade, an attorney-client relationship was created which then prohibited Robinson 
Cole from representing the defendants, pursuant to Rule 1.9 of the Rules of Professional Conduct. The plaintiffs next argue that even if an attorney-client relationship did not exist, any disclosures made to Wade were confidential and by imputation were known to the Robinson Cole law firm to the plaintiffs' detriment. There is no evidence that Wade actually disclosed any of the information gained to defendants' trial counsel, Attorneys Goldman and Campanella, or that they had access to his file and notes concerning Chapman.
The defendants argue first, that no attorney-client relationship was created and that even if one was, it was not in the same or substantially related matter as this action. Secondly, they argue that the plaintiffs have waived or are estopped to seek disqualification by untimely filing their motion, and that such disqualification would greatly prejudice the defendants.
 II.
Rule 1.9 of the Rules of Professional Conduct is entitled "Conflict of Interest: Former Client" and provides:
"A lawyer who has formerly represented a client in a matter shall not thereafter: CT Page 11397
(a) Represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."
The first question that must be determined is whether, within the meaning of the Rule, Wade can be said to have "formerly represented a client [Chapman] in a matter." The burden of establishing this is on the movant. State v. Bunkley, 202 Conn. 629, 652 (1987), and the existence or non-existence of the attorney-client relationship is a question of fact. Here, the court concludes that there was no meeting of the minds, considering that the meeting with Chapman himself occupied less than one hour, that Wade offered to represent Chapman, but the offer was not accepted, that Wade did no legal work of any kind for Chapman, that Wade did not do any investigation of the facts, or obtain any reports or indicate to anyone that he was representing Chapman in the sexual assault matter. Wade did not represent Chapman in the matter and therefore an attorney-client relationship did not come into existence.
 III.
This conclusion does not end the inquiry into the matter because there is no question that whenever one consults an attorney with a view to retain him in a criminal matter, one expects that anything divulged to the attorney would be kept confidential. Indeed, the prior rules specifically so provide, "Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. . ." Code of Professional Responsibilities, Section EC 4-1. (emphasis provided). Wade so testified, and defendants do not dispute, that whatever was disclosed to Wade in the context of the meeting with Chapman would remain confidential. Defendants' counsel argues, however, that even if confidential communications were made, any such CT Page 11398 information has by now become generally known by reason of Chapman's second arrest for sexual misconduct and the ensuing two trials and convictions and the widespread notoriety which emanated from them.[1]
Although the current rules of professional conduct do not specifically apply to a situation, where as here, a consultation is not followed by the attorney's legal representation, it is clear that any confidences disclosed to Wade must remain confidential unless generally known. It is also clear that any information given to Wade is imputed to his law firm, Robinson Cole, and the issue then arises as to whether such information would impermissibly taint this case. If so, even though not specifically within the current rules, the court has inherent and statutory authority to regulate the conduct of attorneys who are officers of the court by disqualification or imposition of other prophylactic action. State v. Jones, 180 Conn. 443, 448 (1980), overruled in part on other grounds; State v. Powell, 186 Conn. 547
(1982) (cert. denied).
And, even though no formal attorney-client relationship was created by the consultation, the court concludes that the same criterion embodied in Rule 1.9 should apply, that is whether the present matter is the same or a substantially related matter as the sexual assault charge for which Chapman originally consulted Wade. As this case involves a lawsuit on a homeowners' insurance policy, clearly the matter is not the same. The substantial relationship test permits disqualification ". . .only upon a showing that the relationship between the issues in the prior and present cases is "patently clear" or when the issues are "identical" or "essentially the same." State v. Jones, 180 Conn. 443,449 (1980).
The plaintiffs have the burden of proof on this issue, and the court concludes that they have not met that burden. The plaintiffs claim that during the consultation, besides the discussion of the sexual assault charge, Chapman would have had to reveal facts and impressions concerning his thoughts, personal background and character. The plaintiffs further argue, in effect, that since the defendant insurance carrier denied their fire loss claims in part as a result of its perception of Chapman's propensity for violence based on the allegation of sexual misconduct, the relationship between CT Page 11399 the issues are patently clear or essentially the same.
The defendants, on the other hand, assert that the issues are not substantially related, as the defendants in their special defenses only assert that Chapman misrepresented the number of times he was charged with sexual misconduct. The defendants make no claim and assert no defenses in the pleadings, related to the facts underlying either of Chapman's sexual assault arrests or claims of sexual misconduct.
The court looks to the comment under Rule 1.9 for some guidance, which states in pertinent part, "The scope of a matter for purposes of paragraph (a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question. . . ."[2] Moreover, there has been no showing that defendants' trial counsel obtained any information from Wade or his file or obtained any advantage over the plaintiffs by virtue of the November 1987 consultation. In this regard, the court notes that of the two fire losses complained about, in only the second, which took place almost two years after the consultation is the sexual assault misrepresentation an issue. The court cannot and will not presume unethical conduct by defendants' attorneys, where none has been demonstrated.
 IV.
The court must weigh and consider three competing interests in a motion to disqualify. They are the plaintiffs' interest in protecting confidential information from disclosure to the defendants, the defendants' interests in freely selecting counsel of their choice, and the interest of the public in the scrupulous administration of justice. Knights of Columbus Federal Credit Union v. Salisbury,3 Conn. App. 201, 204 (1985), citing Goldenberg v. Corporate Air, Inc., 139 Conn. 504, 507 (1983).
The court must balance these interests in determining whether disqualification or some other curative measure would be appropriate. In this regard, the court CT Page 11400 considers the following factors. The length of time which elapsed between the claimed adverse representations, and the tenuous relationship between the nature of the disclosures to Wade and the material issues involved in the present litigation which are distinct and separate. The court also must consider that Attorney Goldman ran "a conflict check" when the defendants sought to retain him to investigate and defend plaintiffs' fire loss claims. When the computer disclosed Chapman's name, he immediately questioned Wade about the existence of a potential conflict, and was assured by Wade that one did not exist. In hindsight, Goldman should have made a more searching inquiry so that he would have been in a better position to determine whether any information disclosed to Wade would have borne upon the issues likely to be raised in the defense of the fire loss claims. Since information imputed to one lawyer in a firm is imputed to all, he could have and should have reviewed Wade's file and determined at that time, knowing what he knew then about the fire loss claims, whether the issues were substantially related.
However, he did not do so, and at this time, Robinson Cole has devoted 2,000 hours to this litigation, taken approximately 15 depositions, and retained expert witnesses. The combined witness lists of both sides anticipates almost 100 witnesses, and the parties estimate approximately 1,000 exhibits to be introduced at trial.
The court also considers that Mr. Chapman's testimony to the effect that he did not know, realize or remember that Wade was a member of the Robinson Cole law firm until after the fourth day of jury selection is simply not credible. He went to its Hartford office where the firm name is prominently displayed; he received a "retention letter" from Wade on Robinson Cole stationery; he telephoned Wade twice, once to make an appointment, the second time to notify Wade that he would obtain other representation, and the firm's telephones are answered by stating the firm's name; and he was summoned to an examination under oath by letter on Robinson Cole stationery displaying the firm name, and he attended that examination at the firm office on two occasions in the fall of 1989, over three years ago. Chapman had an obligation to notify his attorney early in these proceedings, for his own benefit, and to avoid irreparable changes of position and CT Page 11401 resultant prejudice, and he did not do so. Waiver is the intentional relinquishment of a known right. Waiver need not be express but may be implied from acts or conduct. Novella v. Hartford Accident Indemnity Co., 163 Conn. 552, 562
(1972). Estoppel rests on the conduct of one party to the prejudice of the other. Waiver or estoppel may be inferred if it is reasonable to do so. Chapman's failure to act is deemed to be a waiver.
In ruling on disqualification matters, a court should give deference to the right of a client to choose its own counsel so long as high professional standards are maintained.
"A client whose attorney is disqualified incurs a loss of time and money in being compelled to retain new counsel who in turn would have to become familiar with the prior comprehensive investigation which is the core of modern litigation. The client moreover may lose the benefit of its long time counsel's specialized knowledge. . . ." In re Peck,112 B.R. 485 (Bkcy D. Conn. 1990) (Shiff, J.), citing Government of India v. Cook Indus., Inc., 569 F.2d 737, 739
(2d Cir. 1978).
In this case, both defendants had a long-term relationship with Robinson Cole, and in particular with Goldman, who had represented them on numerous fire loss claims to their satisfaction. The defendants reposed confidence in him and the firm.
Because the courts must guard against strategic or tactical use of motions to disqualify counsel (see Goldenberg v. Corporate Air, supra, 516), such motions are subject to strict scrutiny. And, any attorney should not be disqualified unless the attorney's presence will tend to taint the case and put the plaintiffs at a disadvantage.
The court also observes disqualification would compel defendants to retain new counsel who would require at least several months to become familiar with the files and prepare the defense. This would result in substantial delay in the due administration of justice.
Bearing in mind that disqualification is both harsh and draconian, and that the movants have a heavy burden to CT Page 11402 show clearly that disqualification is warranted, the court concludes, after considering all of the circumstances, that the motion should be denied.
However, as Judge Shiff and other courts have done, this court finds it necessary "to adopt an approach that focuses primarily on preserving the integrity of the trial process." In re Peck, supra, 489. See also State v. Bunkley, 202 Conn. 629 (1987); State v. Goldenberg, supra; State v. Jones, supra.
Assuming, arguendo, that Wade and his notes are the repository of confidential information which may bear on an issue in this case, the court concludes that the three competing interests already referred to, protection of confidential information from disclosure, defendants' interest in the selection of counsel of their choice and the public's interest in the scrupulous administration of justice will by served by the entry of the following orders:
(1) Neither Wade nor his secretary or paralegal, if any, shall discuss either the Chapman criminal case or this case with any other attorney, secretary or paralegal in Robinson Cole or with any representatives of the defendants, nor permit any such person to discuss either case with them.
(2) A copy of Wade's original file shall be given to the attorneys for the plaintiffs and the original file shall be sealed and filed with the trial court. No part of said file may be given or disclosed to defendants' counsel.
(3) Upon objection by the plaintiffs to any evidence proffered by the defendants relating to Chapman's character, or background or the alleged sexual assault on which he originally consulted Wade, or any events which occurred prior to November 25, 1987, reasonably related to such assault, defendants shall be required to make a showing that such evidence was obtained independently from Wade's consultation.
The plaintiffs motion for "Default/Disqualification/Preclusion is denied, except as above ordered.
Teller J. CT Page 11403