[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs move to disqualify the law firm of LeBoeuf, Lamb, Greene and MacRae ("LeBoeuf"), from continuing to represent certain defendants in this case based on LeBoeuf's previous representation of certain of the plaintiffs and another defendant.
The movants contend that Rules of Professional Conduct 1.7, 1.9, 1.10, and 3.7 prohibit LeBoeuf from appearing on behalf of defendants Jonathan Keller; the Freemont Group, LLC; Freemont Riverview, LLC; Freemont 155, LLC; Freemont 131, LLC; Freemont 183, LLC; 654 Tolland Street, LLC; and Freemont Prestige Park, LLC.
On March 5, 2003, the court heard argument on this motion. The court declined to conduct an evidentiary hearing because the material facts, including the nature and number of previous representations by LeBoeuf, are undisputed. Knights of Columbus v. Salisbury, 3 Conn. App. 201, 203
(1985).
Between 1996 and 2000, LeBoeuf represented various business entities which were or are part of Beckenstein Enterprises. Two of these entities, Tolland Enterprises and Beckenstein Enterprises-Prestige Park, LLC, are presently suing the defendants that LeBoeuf currently represents. During this four year period, LeBoeuf, among other law firms, acted as outside counsel for these entities in numerous matters across a broad spectrum of legal areas, including environmental, landlord-tenant, employment, zoning, and corporate administrative matters. LeBoeuf employed over forty different lawyers in that effort and earned legal fees exceeding $500,000 for that work.
In October 2002, two years after LeBoeuf last worked for the movants, the movants commenced the present forty-count action against the defendants, including those represented by LeBoeuf. Essentially, the plaintiffs allege that for a number of years Dennis Smith acted as house CT Page 4209 counsel for the plaintiffs while concealing the fact that he had been suspended from the practice of law; and that while these entities were winding down and attempting to sell off real estate assets, because Robert Beckenstein, a dominant shareholder or co-owner of the entities, was dying, Smith engaged in a pattern of self-dealing involving kickbacks and sweetheart deals to the financial disadvantage of his employers. It is further claimed that the other defendants conspired with and assisted Smith in this endeavor and/or received unmerited financial gain from his wrongdoings at the expense of the plaintiffs.
It is conceded that LeBoeuf never represented any of the plaintiffs regarding the real estate assets which are the subject of this suit nor had LeBoeuf's present clients conducted any business with the plaintiffs during the period when LeBoeuf represented any of the Beckenstein entities.
 I
"Disqualification of counsel is a remedy that serves to `enforce the lawyer's duty of absolute fidelity and to guard against the danger of inadvertent use of confidential information.'" Bergeron v. Mackler,225 Conn. 391, 397 (1993); American Heritage Agency, Inc. v. Gelinas,62 Conn. App. 711, 725 (2001). The competing interests in play in a motion to disqualify are (1) the former client's interest in protecting confidential information; (2) the present client's interest in retaining counsel of its choice; and (3) the public's interest in the scrupulous administration of justice. Bergeron v. Mackler, supra, 398. Courts must be mindful that time and money may be lost if an attorney is disqualified. Id.
 A.
Although the movants cite Rule of Professional Conduct 1.7, that rule applies to conflicts of interest between two present clients and is, therefore, inapplicable to the current circumstances.
 B.
Rule of Professional Conduct 1.9 governs conflicts arising among present and former representations. Section (1) forbids an attorney from representing a new client "in the same or a substantially related" matter adverse to the interests of a former client without that former client's consent. Section (2) bars the use of "information relating to the [new] representation to the disadvantage of the former client." CT Page 4210
Thus Section (1) of 1.9 is limited to those situations where the former and current clients are involved in the same or a substantially related matter. Section (2) of 1.9, however, has no such limitation.
Under Section (1), the relationship between the issues of the earlier and later matters must be "patently clear" and essentially the same.Bergeron v. Mackler, supra, 398-99. The burden is on the movant to demonstrate such a relationship. Rate Corporation, Inc. v. Longo,
Superior Court, Stamford J.D., d.n. CV01-186574 (October 30, 2002), Lewis, J.T.R. (33 Conn.L.Rptr. 329). Once such a relationship is found to exist, the possession of damaging confidential information is presumed.Bergeron v. Mackler, supra, 399.
The movants argue that Section (1) of 1.9 applies because the issues to be addressed in the present litigation are substantially related to LeBoeuf's former representation of certain Beckenstein entities. The court disagrees and concludes that the present action is sufficiently distinct from the subject matter of LeBoeuf's previous legal assistance to the movants so as to fall outside the prohibition set forth in Section (1) of 1.9. As noted above, the present case concerns claims of abuse of trust and self-dealing by Smith in collusion with and/or to the unjustified benefit of LeBoeuf's present clients. LeBoeuf's former representation involved environmental, zoning, landlord-tenant, and corporate administrative matters. Consequently, no identity of subject matter exists, and LeBoeuf's representation of their present clients does not run afoul of Section (1) of 1.9.
Section (2) of 1.9 poses a more difficult problem, i.e. whether LeBoeuf derived confidential information from its former representation of the Beckenstein entities which may disadvantage the plaintiffs in this case. The movants contend that LeBoeuf's former representation was extensive and broad based and allowed that law firm to obtain an intimate understanding of the organization and operation of Beckenstein Enterprises.
General knowledge of a former client's financial situation is insufficient to disqualify counsel under Rule of Professional Conduct 1.9. Cadle Co. v. Ginsberg, 70 Conn. App. 748, 771-72 (2002); Knights ofColumbus v. Salisbury supra, 204-05. In Cadle Co. v. Ginsberg, supra, a collection action, plaintiff's counsel had represented the defendant two years earlier in a malpractice case. The defendant claimed that plaintiff's counsel had learned about the defendant's finances because of the former representation. The Appellate Court held that, "absent specific evidence as to the financial information disclosed in the malpractice case," the need for disqualification was lacking. Id., CT Page 4211 771-72.
In Knights of Columbus v. Salisbury, supra, plaintiff's attorney had formerly represented the defendant in two previous cases. One case involved a lawsuit by the defendant against an employer, and the other involved an action by the defendant to recover property damage caused by an automobile accident. There was a four-year gap between the last representation of the defendant and the new representation of the plaintiff. Again, the defendant asserted disqualification based on counsel's knowledge of his financial circumstances. Because the subject matter of the earlier cases was so different from the action before the court, no presumption of disadvantageous knowledge barred counsel from representing the plaintiff against the previous client. Id., 204.
Where the former relationship is close, substantial and extensive, however, the increased risk of disadvantage to the previous client caused by knowledge garnered from that relationship may outweigh the right of the new client to counsel of its choice. American Heritage Agency, Inc.v. Gelinas, supra, 727. That case essentially involved a dispute between a divorced couple and their antagonistic claims of ownership to particular assets. The trial court disqualified defense counsel because that attorney had represented the couple over a long period of time with respect to sundry matters and had developed a close relationship with both parties. The Appellate Court affirmed the trial court's action holding that "the plaintiff had an interest in protecting confidential information that [counsel] had acquired during the course of his past representation of the plaintiff." Id., 727.
But even where previous representation may be pervasive and lengthy, quarantine of the record and attorneys who may have obtained confidential information can eliminate the need to employ the drastic measure of disqualification. Goldenberg v. Corporate Air, Inc., 189 Conn. 504
(1983). It should be noted that the "mere appearance of impropriety" standard is inapplicable to attorney disqualification analysis. Bergeronv. Mackler, supra, 399. If the risk of disclosure can be negated by an effective quarantine, the fact that other attorneys in LeBoeuf's firm may have acquired potentially damaging knowledge as a result of that firm's past representation of the movants would pose no ethical impediment to present representation of the defendants who have chosen to retain LeBoeuf. Rivera v. Chicago Pneumatic Tool Co., Superior Court, New London J.D., d.n. 516364 (August 5, 1991), Teller, J. (4 Conn.L.Rptr. 394).
On February 20, 2003, LeBoeuf erected just such a barrier. The attorneys in that firm who are handling this case were insulated from access to the files and records generated by the past representation of CT Page 4212 Beckenstein entities. They are also restricted from discussing either former or present representation with any attorney who previously worked on Beckenstein Enterprises matters.
Balancing the competing interest described above, the court rules that LeBoeuf may continue to represent these defendants, as long as the quarantine noted above is scrupulously honored, without violating either Section of Rule 1.9 of the Code of Professional Conduct. The former representation did not pertain to assets which are the subject of this suit against LeBoeuf's new clients. Any confidential information obtained from past representation of the Beckenstein entities appears centered around the organization and operation of those entities generally. The quarantine currently in effect adequately protects against detrimental use of any confidential information previously learned through past representation.
 II
The plaintiffs also assert that LeBoeuf is disqualified from representing these defendants because of Rules of Professional Conduct 3.7 which bans counsel from representing a client when counsel "is likely to be a necessary witness" in the case. The movants claim that the lawyers in the firm who represented Beckenstein entities are likely to be called as witnesses to the actions of Dennis Smith, who they contend held himself out as the movants' house counsel for several years including the period when LeBoeuf represented the Beckenstein entities and the period when the transactions which are the core of the lawsuit occurred. Also, the movants indicate that one or two of LeBoeuf's attorneys learned of Smith's favorable attitude toward side deals and kickbacks. For purposes of this motion, the court assumes that these attorneys probably will be necessary witnesses at trial.
Before 1986, the Code of Professional Responsibility proscribed representation not only by the attorney-witness but by any lawyer in the attorney-witness's firm, with certain exceptions which are irrelevant to this motion. See DR5-101(B) and DR5-102(A) and (B). Practice Book, 1985; also see Jennings Co., Inc. v. DiGenova, 107 Conn. 491, 498 (1928). However, in 1986 our rules of practice replaced the Code of Professional Responsibility with the Rules of Professional Conduct, including 3.7(b). That subsection broke from the earlier prohibition and now specifically provides that "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyers' firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9."
In this case, the LeBoeuf attorneys who will try the case are not the CT Page 4213 lawyers who previously dealt with Beckenstein Enterprises or Dennis Smith and have no potential to testify. As noted in Section I of this memorandum, the quarantine arrangement avoids any violation of Rule 1.9, and Rule 1.7 is inapplicable. Therefore, Rule 3.7 fails to bar LeBoeuf from representing these defendants. Bush v. Water Pollution ControlAuthority, Superior Court, Fairfield J.D., d.n. CV02-390743 (December 12, 2002), Doherty, J.; Johnston v. Casey, Superior Court, New London J.D., d.n. 557021 (April 25, 2002), Corradino, J. (32 Conn.L.Rptr. 74).
For the above reasons, the motion to disqualify is denied, and the quarantine is ordered to remain in place.
Sferrazza, J. CT Page 4214