The GOVERNMENT OF INDIA and The
Food Corporation of India,
Plaintiffs-Appellants,

v.

COOK INDUSTRIES, INC. and Cook and
Company, Defendants-Appellees.

No. 74, Docket 76–7618.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1977.

Decided Jan. 13, 1978.

Alvin H. Meadow, New York City (Norman Moloshok, and Delson & Gordon, New York City, on the brief), for plaintiffs-appellants.

Victor S. Friedman, New York City (Jeffrey M. Siger, David M. Glass, and Fried, Frank, Harris, Shriver & Jacobson, New York City, on the brief), for defendants-appellees.

Before MANSFIELD and TIMBERS, Circuit Judges, and DOOLING, District Judge.*

TIMBERS, Circuit Judge:

On this appeal from an order entered in the Southern District of New York, Robert J. Ward, *District Judge*, 422 F.Supp. 1057, the question presented is whether the district court correctly disqualified attorney Frederick W. Meeker and the law firm with which he presently is associated, Delson & Gordon, from representing in the instant action plaintiffs The Government of India and The Food Corporation of India (collectively, "India") on the ground that Meeker, while associated with the law firm of Hill, Rivkins, Carey, Loesberg and O'Brien ("Hill, Rivkins"), in a similar action previously had represented defendants Cook Industries, Inc. and Cook and Company (collectively, "Cook"). We hold that the district court correctly disqualified the attorney and his law firm. We affirm.

I.

In view of the district court's adequate findings of fact which we accept, Fed.R. Civ. P. 52(a), we summarize here only those facts necessary to an understanding of our rulings below on the legal issues presented.

Shortly before Meeker's graduation from law school in June 1972, he became associated with Hill, Rivkins. In 1973 he was assigned to represent Cook in two closely related actions which were commenced in 1973 against Cook in the Southern District of New York (the "Soybean Actions").

In the Soybean Actions plaintiffs alleged that Cook had sent them a shipment of soybeans from Louisiana which, upon arrival at its destination in Taiwan, was found to be 254 tons short of the amount stated on the bills of lading and weight certificates. Plaintiffs, alleging that either Cook or the carrier had failed to perform its contractual obligations, commenced separate actions against each. In the action against the carrier, the latter impleaded Cook, alleging that if there was a shortage it was due to Cook. The two actions were consolidated. On February 20, 1976, Judge Stewart dismissed both of the Soybean Actions.

On April 5, 1976, Meeker, having left Hill, Rivkins, became associated with Delson & Gordon. Within a month he was assigned to represent the India plaintiffs against the Cook defendants in the instant action which was commenced May 3, 1976.

Upon the refusal of Delson & Gordon and Meeker to withdraw as counsel for plaintiffs in the present action at the request of Cook's counsel, Fried, Frank, Harris, Shriver & Jacobson, the motion to disqualify was filed. From the order of November 19, 1976 granting that motion, the instant appeal has been taken.

II.

In the context of this sequence of events, we focus upon those facts which bear upon the relationship between the issues in the

* Hon. John F. Dooling, Senior United States District Judge, Eastern District of New York, sitting by designation.

respective cases and Meeker's involvement therein.

In the Soybean Actions, the validity of the critical documents had been challenged in the carrier's third-party complaint. They also were contested by plaintiffs and the carrier in opposing Cook's motion for summary judgment. In an affidavit by counsel for the carrier in opposition to that motion it had been asserted that "any fraud which may have been present originated with Cook or its agents." This was in response to Meeker's affidavit in support of Cook's motion for summary judgment which alleged that any shortage had been caused by the carrier's fraudulent bills of lading.

During the three years of Meeker's association with Hill, Rivkins, the firm billed Cook for more than one hundred hours of Meeker's services. Among other services, Meeker prepared answers to the complaints against Cook, a motion for a stay pending arbitration, a request for admissions, a motion for summary judgment and various memoranda in support of these motions. He interviewed a witness with regard to the weight certificates. He attended several pretrial conferences and one settlement conference. Throughout this period he maintained close contact with Cook's general counsel.

In the instant action India alleges, as plaintiffs did in the Soybean Actions, that grain delivered pursuant to contracts with Cook were of "short weight". A central allegation here, as in the earlier actions, is that the amounts of grain actually delivered differed from the amounts stated on the weight certificates. As in the Soybean Actions, it is alleged in the instant action that the documents were fraudulently issued.

Other facts are clearly set forth in the district court's opinion, with which we assume familiarity. 422 F.Supp. at 1059, 1061–63.

### III.

Turning to the legal issues presented in light of these facts, we must determine essentially whether the district court was correct in holding that Cook, the former client which made the disqualification motion, sustained its burden of showing (1) that the issues in the prior and present cases were substantially the same, and (2) that Meeker's involvement in the prior case was such that he was likely to have come across relevant privileged information. We hold that the district court was correct in holding that Cook sustained its burden in both respects.

### (A) *Substantial Relationship Test*

Semantics aside, clearly the issues in the prior and present cases were substantially related. The fraud issue in the Soybean Actions required Hill, Rivkins to conduct confidential inquiries as to Cook's loading procedures. The very same information necessarily was the cornerstone upon which India's fraud claim against Cook in the instant case was based. It would be difficult to think of a closer nexus between issues.

In ruling as we do, we are mindful that there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel—a right which of course must be balanced against the need to maintain the highest standards of the profession. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 753 (2 Cir. 1975); *Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2 Cir. 1973). A client whose attorney is disqualified incurs a loss of time and money in being compelled to retain new counsel who in turn have to become familiar with the prior comprehensive investigation which is the core of modern complex litigation. The client moreover may lose the benefit of its longtime counsel's specialized knowledge of its operations. Such considerations have resulted in honing the "substantial relationship" test in this Circuit in practical application to granting disqualification only upon a showing that the relationship between issues in the prior and present cases

is "patently clear". *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra,* 518 F.2d at 754–56. Put more specifically, disqualification has been granted or approved recently only when the issues involved have been "identical" or "essentially the same". E. g., *NCK Organization, Ltd. v. Bregman,* 542 F.2d 128, 135–36 (2 Cir. 1976) (concurring opinion); *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2 Cir. 1975); *Emle Industries, Inc. v. Patentex, Inc., supra,* 478 F.2d at 572; *Motor Mart, Inc. v. Saab Motors, Inc.,* 359 F.Supp. 156, 158 (S.D.N.Y. 1973).[1]

**(B) Attorney's Prior Involvement**

This does not end our inquiry. Having determined that the district court correctly held that the issues in the prior and present cases were substantially related, we turn to the remaining question whether Meeker's involvement in the prior case was such that he would have had access to relevant privileged information. We hold that the district court correctly held that he did.

■ On this branch of our inquiry we start with the well established principle that, in order to grant a disqualification motion, a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case. Such a requirement would put the former client to the Hobson's choice of either having to disclose his privileged information in order to disqualify his former attorney or having to refrain from the disqualification motion altogether. *Hull v. Celanese Corp., supra,* 513 F.2d at 571–72; *Emle Industries, Inc. v. Patentex, Inc., supra,* 478 F.2d at 571; *T. C. Theatre Corp. v. Warner Bros. Pictures, supra,* 113 F.Supp. at 269.

■ Here, in the light of the district court's detailed findings of fact, there is not the slightest doubt that Meeker, while representing Cook, was deeply involved in the Soybean Actions for a period of three years. The fact that "a partner was also assigned to these cases" is immaterial since "Meeker was in day-to-day charge of the cases" and "no assertion is made to the contrary." 422 F.Supp. at 1059 n. 2.

■ We are satisfied, based on our careful review of the entire record, that Judge Ward's findings of fact are adequately supported by the evidence and that his disqualification order was well within his discretion. *Hull v. Celanese Corp., supra,* 513 F.2d at 571.

Affirmed.

MANSFIELD, Circuit Judge (concurring):

I concur in Judge Timbers' carefully considered opinion. The district court's conclusion that Mr. Meeker's prior relationship with Cook supported an inference that he might have conducted at least a limited investigation into Cook's weighing and loading procedures has evidentiary support, including Meeker's communications with Cook personnel (Reams and Ireland), his letter to Reams of September 26, 1973, and the hand-written notes found in the Hill-Rivkins file. In view of the extent of Meeker's prior involvement in substantially related matters and the probability that he received confidential information in the prior representation, it was hardly an abuse of discretion to disqualify him from representing the plaintiffs in the present action.

1. Appellants mount a massive attack on the district court's reliance here, 422 F.Supp. at 1061, upon Judge Weinfeld's formulation of the substantial relationship test in *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F.Supp. 265, 269 (S.D.N.Y.1953), as requiring the court to ask "whether it can reasonably be said that in the course of the former representation the attorney *might* have acquired information related to the subject of his subsequent representation." (emphasis added).

Read in the context of Judge Ward's opinion *as a whole* and in the light of this Court's repeated references over a period of nearly a quarter of a century to Judge Weinfeld's opinion *as a whole* in *T. C. Theatre Corp.,* we find no merit in appellants' attack in this respect. Moreover, as indicated above, no matter how the substantial relationship test is characterized, the close nexus between the issues in the prior and present cases here satisfied that test beyond cavil.

However, I am reluctant to endorse the district court's unqualified statement to the effect that once a substantial relationship is shown between the subject matters of the two representations and that the lawyer's personal role in the former representation was more than peripheral, the presumption that the attorney had access to confidential information in the prior relationship is "irrebuttable," 422 F.Supp. at 1059–60. On the contrary, we only recently in *Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp.*, 518 F.2d 751, 754 (2d Cir. 1975), reaffirmed our earlier holding that the presumption was rebuttable, stating:

"Thus, while this Circuit has recognized that an inference may arise that an attorney formerly associated with a firm himself received confidential information transmitted by a client to the firm, that inference is a rebuttable one. *Laskey Bros. of W. Va., Inc. v. Warner Bros. Pictures*, 224 F.2d 824, 827 (2d Cir. 1955), *cert. denied*, 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed.2d 814 (1956); *United States v. Standard Oil Co.*, 136 F.Supp. 345, 364 (S.D.N.Y.1955). And in *Laskey*, the court cautioned that:

"It will not do to make the presumption of confidential information rebuttable and then to make the standard of proof for rebuttal unattainably high. This is particularly true where, as here, the attorney must prove a negative, which is always a difficult burden to meet.

"224 F.2d at 827. The importance of not unnecessarily constricting the careers of lawyers who started their practice of law at large firms simply on the basis of their former association underscores the significance of this language. *See generally*, Note, *Unchanging Rules in Changing Times: The Canons of Ethics and Intrafirm Conflicts of Interest*, 73 Yale L.J. 1058 (1964)."

While I appreciate that a "former client-present adversary" should not unnecessarily be put to a Hobson's choice of revealing confidences in order to obtain a disqualification, its interest may be outweighed in some cases by other interests at stake, including not only the investment of the attorney's present client but the reputation of the attorney himself, which may needlessly suffer unless he is given an opportunity to clear his name. Disqualification of an attorney may threaten an undeserved and unfair stigma that could result in great professional harm, particularly for one who is on the threshold of his career. For these reasons I believe that the district court should have the discretionary authority to permit the attorney to dispel a false impression that might arise if the presumption were held to be irrebuttable.

In some instances this dilemma might be resolved, as Judge Timbers suggests, by giving a narrow interpretation to the words "substantial relationship" and permitting disqualification only when the issues are identical or essentially the same. However, we have not hesitated in the past to exalt the "appearance of impropriety" over actual acquisition of confidential information. See, e. g., *General Motors Corp. v. City of New York*, 501 F.2d 639, 649–52 (2d Cir. 1974).

The essential issue, of course, is whether an impression is created that the attorney may have gained confidential information from his prior relationship that is usable against his former client. In some cases, even though the subject matter of the two relationships may appear to be substantially the same, the attorney may also be able to show that he gained no confidential information at all from the earlier representation. It would be unfair to preclude such a showing by clinging to an irrebuttable presumption. For this reason I believe that the district court should have the discretionary power in an appropriate case to permit the door to be opened for rebuttal of the presumption. I am confident that in such rather rare cases the court will devise appropriate means, including use of *in camera* or other protective devices, to safeguard the interests of the former client.