**LAGOVEN, S.A., Plaintiff,**

v.

**PLAZA PETROLEUM, INC., Defendant.**

**No. 92 CV 4257.**

United States District Court, E.D. New York.

July 2, 1993.

Haight, Gardner, Poor & Havens (Juan A. Anduiza, of counsel), New York City, for plaintiff.

Robert Castellano, New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Lagoven, S.A. (Lagoven) brings this action to obtain payment from defendant Plaza Petroleum, Inc. (Plaza) for oil products delivered by Lagoven to Plaza in 1991. Plaza moves to disqualify Lagoven's counsel.

I

The essential background facts are, in substance, the following.

On February 7, 1991 Lagoven transferred 947 metric tons of oil products from its pipeline in Amuay Bay, Venezuela to the M/T White Sea, a cargo vessel. Lagoven sent an invoice to Plaza on February 9, 1991 in the amount of $131,228.23 with instructions to remit payment within 30 days to a specific account at Chase Manhattan Bank in New York.

Plaza says that it instructed its bank, Manufacturers Hanover Trust Co. (Manufacturers Hanover), to wire the funds to the Lagoven account but that the wire transfer inexplicably went awry. Plaza says the monies were deducted from its account. Lagoven says the funds were never received.

In late July 1991 Lagoven requested collection assistance from its current counsel, the law firm of Haight, Gardner, Poor & Havens (Haight Gardner). That firm conducted its standard internal conflict of interest search and learned that it had represented Plaza in several matters in the past. It concluded that its representation of Plaza had concluded by early 1991 and that the present matter did not bear a substantial relationship to any past matter. Moreover, it determined that no attorney who had had access to Plaza's files would be allowed to work on the Lagoven matter. Accordingly, it agreed to represent Lagoven in the matter.

Meanwhile, Lagoven pressed Plaza for payment. On August 2, 1991 Plaza responded with a letter to Lagoven explaining that it was diligently urging Manufacturers Hanover to locate the funds, adding it had instructed Plaza's attorneys "in New York to pursue action." While Plaza has not identified the law firm from which it sought assistance, it was not Haight Gardner.

On August 15, 1991 Haight Gardner informed Plaza that it was representing Lagoven in this collection matter and asked Plaza to remit payment. Plaza responded to Haight Gardner by letter dated August 22, 1991, explaining that it was unable to remit payment because the "funds in question are sitting in [a] 'limbo' type account of Manufacturers Hanover Trust, or Chase Manhattan."

In June 1992, some ten months later, Plaza retained its present counsel, Robert Castellano, who, in a letter dated June 10, 1992, objected to Haight Gardner's representation of Lagoven. Haight Gardner attempted to negotiate a resolution during the next several months, but Mr. Castellano appeared unwilling to discuss the merits of the dispute.

In evident frustration with Plaza's refusal to resolve the issue, Lagoven brought this action on September 3, 1992. Plaza filed an answer presumably conforming to the "reasonable inquiry" requirement of Rule 11 of the Federal Rules of Civil Procedure, denying allegations that (i) Plaza had purchased the oil products from Lagoven, (ii) Lagoven had made "repeated inquiries" regarding payment, and (iii) the correspondence in which Plaza stated that the wire transfer was misdirected constituted an admission of liability.

Since the filing of the complaint Plaza has been unwilling to cooperate with Lagoven's

discovery demands. On March 9, 1993, Chief Magistrate Judge A. Simon Chrein, to whom all discovery disputes had been referred, stayed all discovery until this court decided whether to disqualify Haight Gardner or to lift the stay.

## II

Plaza contends that Haight Gardner should be disqualified because (1) Haight Gardner represented Plaza and Lagoven concurrently, (2) the issues involved here bear a substantial relationship to the subject matter of Haight Gardner's prior representation of Plaza, and (3) Haight Gardner's current representation of Lagoven creates an appearance of impropriety.

### A. *Canon 5 and concurrent representation*

Plaza contends that, at the time Haight Gardner began to represent Lagoven in this matter, Plaza was an existing client of Haight Gardner.

Canon 5 of the American Bar Association Code of Professional Responsibility (the Code) provides that "[a] lawyer should exercise independent judgment on behalf of a client" and generally forbids an attorney from representing a person with interests different from or adverse to an existing client. *Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 538 (S.D.N.Y.1989).

The papers do not support Plaza's contention. Haight Gardner represented Plaza on four distinct matters between 1989 and early 1991: (i) a claim for oil spill liability, (ii) legal advice regarding the *in rem* rights against a vessel, (iii) the cancellation of a supply contract, and (iv) an effort to collect payment on unpaid invoices for the sale of marine fuel oil. The last of these matters was completed by March 30, 1991. On May 1, 1991 Haight Gardner issued an invoice labelled "Final Statement," wording it used in concluding each of the four matters.

Plaza has made no showing that it had entered into a retainer agreement whereby Haight Gardner would provide legal assistance on an as-requested basis or that Plaza had requested or received legal assistance from Haight Gardner after March 30, 1991.

To the contrary, the papers show that Plaza had failed to pay a January 27, 1991 invoice for legal services; that Plaza had retained a different law firm in late 1990 to pursue the matter billed in the January 27, 1991 invoice; and that on August 2, 1991, Plaza had instructed New York attorneys other than Haight Gardner to investigate the collection dispute.

These facts show that Haight Gardner had reasonable grounds upon which to believe Plaza was not an existing client, and that Plaza did not conduct itself in a manner consistent with its purported belief that it was a Haight Gardner client.

In a sworn affidavit, Peter A. Proscia, the President of Plaza, stated that he was "shocked" to receive a letter from Haight Gardner in June 1992 seeking payment of the obligation owed to Lagoven. This is puzzling, since Mr. Proscia engaged in an exchange of letters with Haight Gardner regarding this matter some ten months before. Moreover, Mr. Proscia did not object in August 1991, or at any time during the next ten months, to Haight Gardner's representation of Lagoven. The papers suggest that Mr. Proscia's purported surprise was pretextual and that, by failing to indicate in August 1991 that he thought he was represented by Haight Gardner in such matters, he consented to Haight Gardner's representation of Lagoven.

Plaza contends that, because Haight Gardner sent a letter on March 4, 1992 demanding payment for legal services billed on January 27, 1991, Plaza was an existing client in March 1992. This letter merely suggests that Plaza makes a habit of refusing to honor its obligations.

Plaza next contends that the papers do not dispel the possibility that Haight Gardner represented Lagoven in early 1991, when this purported sale occurred. This is irrelevant. Haight Gardner could have represented Lagoven for a decade. The issue posed by Canon 5 is whether Plaza was an existing client of Haight Gardner at the time Haight

Gardner agreed to assist Lagoven in a matter adverse to Plaza.

This court concludes that, at that time, Plaza was not an existing client of Haight Gardner.

### B. *Canon 4 and the "substantial relationship" test*

Canon 4 provides that "[a] lawyer should preserve the confidences and secrets of a client." Ordinarily an attorney may not knowingly reveal a confidence of a former client or use a confidence of his client to the disadvantage of the client. *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).

To ensure faithful adherence to this principle, an attorney may be disqualified from representing a client in a particular case if:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans*, 715 F.2d at 791; *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268 (S.D.N.Y.1953).

The *Evans* court added, "in disqualification matters we must be solicitous of a client's right freely to choose his counsel." *Evans*, 715 F.2d at 791–92 (citation omitted). Moreover, motions to disqualify " 'are often interposed for tactical reasons' " and, even when interposed in good faith, waste time and impose costs on parties who must then retain new counsel who, in turn, must become familiar with the case. *Id.* (citation omitted).

Given such considerations, "disqualification has been granted or approved recently only when the issues involved have been 'identical' or 'essentially the same.' " *Government of India v. Cook Industries, Inc.*, 569 F.2d 737 (2d Cir.1978). *See, e.g., Kaplan v. Emerson Radio Corp.*, No. 90 CV 3166 (EHN), 1991

WL 41846, 1991 U.S. Dist. LEXIS 3520 (E.D.N.Y. March 14, 1991) (attorney, who was retained by defendant to assist in preparation of proxy statements, was disqualified from representing plaintiffs in an action alleging fraud in those proxy statements).

Plaza has failed to show that matters in which Haight Gardner represented Plaza bear a "substantial relationship" to the present matter. In one instance, Haight Gardner represented Plaza in its efforts to obtain payment for oil products that Plaza sold to a third party. But an attempt to collect a debt is significantly unlike this issue, in which Plaza is attempting to avoid a purported obligation.

If, for example, Haight Gardner had defended Plaza against attempts by others to collect monies purportedly owed by Plaza, the court would presume that Haight Gardner had learned secrets (such as Plaza's invoice-paying and bank-wire procedures). But because the confidences acquired by Haight Gardner in bringing a collection action on behalf of Plaza are substantially different from the confidences acquired in defending such an action, this court will not disqualify Haight Gardner for this reason.

### C. *Canon 9 and the appearance of impropriety*

Plaza contends that Haight Gardner should be disqualified for engaging in conduct that violates Canon 9 of the Code. Canon 9 provides that a lawyer "should avoid even the appearance of professional impropriety."

This court sees no "appearance of professional impropriety." Plaza has pointed to no specific confidences revealed to Haight Gardner that might compromise Plaza. Given that Haight Gardner briefly worked on matters that that bear no substantial relationship to this dispute, the court will not presume that confidences have been breached.

Moreover, Plaza may not simultaneously refuse to compensate Haight Gardner for services rendered while expecting that firm to maintain a continuing duty of loyalty.

III

Defendant's motion to disqualify plaintiff's counsel is denied. The stay of discovery ordered by Chief Magistrate Judge Chrein is hereby lifted.

So ordered.