**Charles S. POLIN, Plaintiff,**

v.

**KELLWOOD COMPANY, Kellwood Sportswear, Enoch Harding, Jr., and Harry Holding, Defendants.**

No. 93 Civ. 7876 (RO).

United States District Court, S.D. New York.

Oct. 26, 1994.

Wisehart & Koch, New York City, for plaintiff (Arthur Wisehart and Michael Prince, of counsel).

Morgan, Lewis & Bockius, New York City, for defendants (Steven R. Wall, Philadelphia, PA, and Christopher A. Parlo, New York City, of counsel).

### MEMORANDUM AND ORDER

OWEN, District Judge:

Before me is a motion by plaintiff Charles Polin to disqualify Morgan, Lewis & Bockius, counsel for defendants Kellwood Company, et al. Polin is a former employee of Kellwood. In this action he claims that he was terminated from employment because of age discrimination, that he had been fraudulently induced by Kellwood to accept employment, and that defendants Harding and Kellwood Sportswear tortiously interfered with his employment relationship with Kellwood through a variety of actions which negatively affected the Kellwood division of which Polin was President. Kellwood retained Morgan, Lewis to defend here.

Morgan, Lewis is also defending Kellwood in another pending lawsuit, *Enteks v. Nursu Okurer v. Kellwood,* 92 Civ. 5881 (S.D.N.Y.) earlier commenced by a former supplier of merchandise to Kellwood. In *Enteks,* the plaintiffs allege that Kellwood refused to pay for certain goods. Polin, plaintiff in this case, was the President of one of Kellwood's divisions when the events in *Enteks* occurred, and had enough involvement in the events to be interviewed by others in the company exploring the matter. He, however, was not named as a party in that matter, nor was he mentioned anywhere in the complaint. Even so, some time after Polin and Kellowood had parted company, the *Enteks* plaintiffs sought his deposition and Morgan, Lewis attorneys Kerri Howland and James Harbison met with him to prepare for it.

Plaintiffs' motion to disqualify essentially arises from his version of conversations with Howland and Harbison during the deposition preparation as to which he testified in the hearing I had on May 12, 1994:

And I specifically asked Miss Howland, and she assured me in no uncertain terms that she was representing me.

THE COURT: What did she say?

THE WITNESS; I asked a specific question, "Are you representing me?"

THE COURT: And what did she say to that?

THE WITNESS: She said, "Of course." And there was not a prolonged discussion. There was not a detailed discussion. It was a question. It was an answer. And at that point it was not an issue at all.

\*     \*     \*     \*     \*     \*

[The morning of the deposition] Miss Howland and Mr. Harbison were there. And I again asked the same question very specifically, no equivocation, to both of them. And again it was a very simple assurance of, "Yes, Chuck, of course we're representing you," or words to that effect.

He expresses concern that Morgan, Lewis may use "confidential" information obtained from him in the course of that litigation against his interest in this litigation, or that it may "soft-pedal" his interest in the *Enteks* case to his detriment.

Howland and Harbison also testified before me. They both specifically deny any suggestion of representation. Indeed, Ms. Howland testified:

A: I had been calling Chuck about notice of the deposition going to be scheduled. So I had been trying to set up a time with Mr. Polin, set up a time for a deposition, so there were a series of conversations.

The first conversation I remember him bringing up the fact did I think he should have a lawyer. I said I didn't know the answer to that, that I would have to talk to Jim [Harbison] about it; well, what was the name of his lawyer. And I wrote it down [Arthur Wisehart] on the back of my Rolodex card; the name, address. You've seen a copy of it.[1] And we continued to talk about scheduling, and that was the end of that conversation.

So that day I went and spoke with Mr. Harbison about it and told him Chuck has brought up wanting his own attorney. What do you think? And as has been repeated here today, Mr. Harbison said Kellwood's interests and Mr. Polin's interests are the same. I don't see why he really would need a lawyer. And we talked about it for a while. And that was the end of that.

I didn't talk to Mr. Polin again probably for a couple of weeks. I didn't call him back immediately. The next time I talked to him about scheduling I rehashed the conversation I had had with Mr. Harbison about what we had talked about, about the interests being the same. And then we probably had two more conversations about scheduling ...

Q. Miss Howland, in connection with any of those telephone conversations, did Mr. Polin ever say to you that he was considering suing Kellwood, that he wanted to sue Kellwood or that he had retained Mr. Wisehart for the purpose of suing Kellwood?

A. No.

Q. Did he identify why Mr. Wisehart was his attorney in any way?

A. No.

\* \* \* \* \* \*

A: I would never have said I was representing him personally because I had the conversations with Mr. Harbison, I had had the conversations with Mr. Polin. I would never contemplate a personal representation of him. I knew he wasn't a defendant, he wasn't a party. My conversations with him were with regard to he was no longer an agent, but he was a former employee of Kellwood and was going to be a witness of Kellwood at a deposition the next day.

Harbison's recollection was essentially in accord with Howland's.

The Second Circuit has noted that "there is a particularly trenchant reason for requiring a high standard of proof on the part of one who seeks to disqualify ... counsel, for in disqualification matters we must be solicitous of a client's right freely to choose his counsel...." *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2nd Cir.1978). And under *Evans v. Artek Systems Corp.*, 715 F.2d 788 (2nd Cir.1983), an attorney may only be disqualified from representing a client in a particular case if:

(1) the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

I conclude on this record however, that whatever Polin may have thought, wished or expected, no attorney-client relationship existed at any time between him and

---

1. [Court's Footnote]  The Rolodex card was received in evidence on the hearing.

Morgan, Lewis. I credit the testimony of attorneys Howland and Harbison to the contrary—corroborated by Howland's Rolodex card with Mr. Wisehart's name and address on it—that they never agreed to represent him, that they informed him they didn't think he needed separate representation and, in any event, believed—because he told them—that Mr. Wisehart was his lawyer.[2] The mere fact that a corporation's lawyer meets with an employee—or as here, an ex-employee—to prepare for a deposition, cannot make the employee the client of the lawyer. Accordingly, no attorney-client relationship existed between him and Morgan, Lewis.

Polin has also failed to show that there was a substantial relationship between the subject matter of the *Enteks* case and the issues presented in this lawsuit. In *Enteks,* Kellwood takes the position that certain difficulties were Enteks' fault, whereas in the instant litigation Polin asserts that Kellwood and defendant Harding bear responsibility for the difficulties encountered. This, however, does not establish a "substantial relationship" between the two cases.

Finally, Polin has failed to show that Morgan, Lewis received from him relevant confidential and privileged information as a result of his deposition—or preparation for it—in the *Enteks* case.

On the contrary, Polin testified:

Q. Now, you testified that you had had several conversations with various people at Kellwood about this Enteks matter before you ever met Mr. Harbison and Miss Howland, correct?

A. That's correct.

\*    \*    \*    \*    \*    \*

Q. And those subjects, had you discussed those subjects, the poor quality of the Enteks goods, as well as the damages and losses that you had suffered as a result of that, with other people at Kellwood before you met with Mr. Harbison and Miss Howland?

A. That's correct.

Thus, Polin could have had no expectation of attorney-client confidentiality when he later spoke about the same subjects with Harbison and Howland.

Accordingly, Polin's motion to disqualify Morgan, Lewis is denied, and Kellwood's motion to admit Steven Wall, a member of that firm, *pro hac vice,* is granted.

So ordered.

---

**2.** Polin himself acknowledged that he asked Howland if it was necessary for him to have his own lawyer, and at that time, when she asked him who his lawyer was, he said, "Arthur Wisehart."