**KOCH INDUSTRIES, INC., KoSa B.V., Arteva Specialties, S.á.r.l. and Arteva Services, S.á.r.l., Plaintiffs,**

v.

**HOECHST AKTIENGESELLSCHAFT,** Celanese Aktiengesellschaft, CNA Holdings, Inc. and Celanese Americas Corporation, Defendants.

No. 03 Civ. 8679 (NRB).

United States District Court, S.D. New York.

June 4, 2009.

Kenneth Conboy, Esq., Catherine E. Palmer, Esq., Blair Connelly, Esq., Latham & Watkins LLP, New York, NY, for Plaintiffs.

Jack Thomas, Esq., Morgan, Lewis & Bockius LLP, Hector Torres, Esq., Kasowitz, Benson, Torres & Friedman LLP, Thomas P. Lynch, Esq., Karen L. Kirshenbaum, Esq., Lynch Rowin LLP, New York, NY, for Defendants.

Stephen P. Younger, Esq., Sarah E. Zgliniec, Esq., Christopher Y. Miller, Esq., Matthew B. Larsen, Esq., Patterson Belknap Webb & Tyler LLP, New York, NY, for Morgan, Lewis & Bockius LLP.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiffs Koch Industries, Inc. ("Koch"), KoSa B.V. ("KoSa"), INVISTA S.á.r.l. ("INVISTA") (f/k/a Arteva Specialties, S.á.r.l.) and Arteva Services, S.á.r.l. bring this action against defendants Hoechst Aktiengesellschaft, Celanese Aktiengesellschaft, CNA Holdings, Inc. and Celanese Americas Corporation, alleging that when defendants sold plaintiffs a polyester manufacturing business in 1998, defendants fraudulently concealed that the business was violating antitrust laws. Plaintiffs assert New York state law claims of fraud, fraudulent misrepresentation, fraudulent concealment and unjust enrichment, and they seek indemnification pursuant to the Asset Purchase Agreement ("APA") that governed the sale.

Discovery in this case has been delayed for years at the request of the parties in deference to a related litigation. Just as the end appeared to be in sight, plaintiffs filed the instant motion, seeking to disqualify all three of defendants' law firms. Plaintiffs argue, in essence, that defendants' firm Morgan, Lewis & Bockius LLP ("Morgan Lewis") should be disqualified because it conducted a confidential antitrust audit on Koch and several of its affiliates approximately two years after defendants sold plaintiffs the polyester manufacturing business. Plaintiffs also argue that defendants' other firms, Lynch Rowin LLP ("Lynch Rowin") and Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz Benson") should likewise be disqualified because they have been "tainted" through their close collaboration with Morgan Lewis in this case. For the reasons set forth below, plaintiffs' motion is denied.

## BACKGROUND[1]

### The Purchase of the Polyester Business

On December 10, 1998, KoSa—which at this time was an independently operated joint venture between Koch subsidiaries and a Mexican company called IMASAB S.A. de C.V.—purchased defendants' polyester manufacturing business for $1.56 billion. (Compl. ¶¶ 10, 48; Morgan Lewis Opp. at 5.) In the APA, defendants represented and warranted that the business was in compliance with all applicable laws and that there were no undisclosed liabilities. (Compl. ¶¶ 107–110.) Defendants also agreed to indemnify plaintiffs for losses associated with the conduct of the polyester business prior to the sale.[2] (Id. ¶¶ 106, 117–18.)

### The Antitrust Audit by Morgan Lewis

In approximately April 2000, Paul Kaleta, Koch's general counsel at the time, retained Morgan Lewis to conduct an antitrust compliance audit of Koch and some of its affiliates. (Mem. at 2.) The audit was to proceed in two stages: first, Morgan Lewis would review Koch's antitrust policies and interview top-level Koch personnel in different divisions, and second, Morgan Lewis would later conduct more in-depth "drill-down" audits of specific Koch business units. (Morgan Lewis Opp. at 6.) During the audit, Morgan Lewis was given access to certain Koch executives and in-house counsel, as well as Koch doc-uments. (Mem. at 4.) After completing the first phase of the audit, Morgan Lewis recommended that Koch encourage KoSa to conduct its own antitrust audit, and Morgan Lewis was informed that KoSa's audit would be conducted by a different law firm. (Morgan Lewis Opp. at 6.) Morgan Lewis did not audit KoSa or any of its subsidiaries, including the entity that owned the polyester business that KoSa purchased from defendants. (Id.)

Morgan Lewis gave Koch a draft of its audit report dated November 9, 2000 and later submitted a final version of that report dated January 25, 2001. (Morgan Lewis Opp. at 6.) Subsequent to the submission of this report, Morgan Lewis conducted only one "drill-down" audit of a non-party Koch affiliate. (Id. at 7.) The audit project ended in October 2001, with Morgan Lewis having billed 641 hours for a total of $217,064. (Id.)

### The DOJ Investigation and Subsequent Litigation

Shortly before the submission of Morgan Lewis's final report in January 2001, a KoSa subsidiary received a grand jury subpoena from the Antitrust Division of the Department of Justice ("DOJ"), seeking information about possible antitrust violations within KoSa's polyester business. (Mem. at 5.) The DOJ investigation and subpoena were not mentioned in Morgan Lewis's final audit report, and Morgan

---

1. The following facts are drawn from the complaint ("Compl."), the Memorandum of Law in Support of Plaintiffs' Motion to Disqualify ("Mem."), the Memorandum of Law of Morgan, Lewis & Bockius LLP in Opposition to Plaintiffs' Motion to Disqualify Counsel of Record ("Morgan Lewis Opp."), and the Memorandum of Law of Kasowitz, Benson, Torres & Friedman LLP in Opposition to Plaintiffs' Motion to Disqualify ("Kasowitz Benson Opp.").

2. Beginning in 1999, Celanese and KoSa were named as defendants in numerous suits alleging asbestos exposure at polyester manufacturing plants. (Kasowitz Benson Opp. at 5.) Pursuant to APA, KoSa tendered those cases to Celanese, which in turn retained Kasowitz Benson to defend KoSa in those lawsuits. (Id. at 5–6.) Kasowitz Benson's ongoing representation of KoSa in those matters has been directed solely by Celanese, and Celanese has paid all Kasowitz Benson's fees. (Id.)

Lewis contends that it was not informed about the investigation prior to the completion of the report. (Morgan Lewis Opp. at 6.) KoSa cooperated with the DOJ investigation, and in December 2002 pleaded guilty to a violation of Section One of the Sherman Act. (Mem. at 6.) Morgan Lewis did not represent KoSa in connection with that investigation or plea. (Morgan Lewis Opp. at 7.)

In late 2002, following the announcement of the plea agreement, plaintiffs were named as defendants in numerous federal and state civil antitrust lawsuits. (Mem. at 6.) All federal actions relating to the polyester manufacturing conspiracy were transferred to a multidistrict litigation in the district court for the Western District of North Carolina (the "North Carolina MDL"). (*Id.*) In early 2003, Morgan Lewis sought a conflict waiver to represent a former KoSa customer in one such civil antitrust suit, and Koch's general counsel refused because of Morgan Lewis's prior antitrust compliance work for the company. (*Id.* at 6–7.)

### The Instant Litigation

In November 2003, plaintiffs commenced this lawsuit. In August 2006, Lynch Rowin took over for Kaye Scholer as defendants' counsel of record. (Mem. at 8.) In May 2008, Morgan Lewis joined Lynch Rowin as defendants' co-counsel. By this point, Kaleta, who had retained Morgan Lewis for Koch's antitrust audits, was no longer at Koch. (*Id.* at 11.) Morgan Lewis did not seek a conflict waiver from Koch before beginning its representation of defendants in this matter, and plaintiffs raised no immediate objection.

In September 2008, during the course of discovery in this case, Koch management became aware that Morgan Lewis had previously done antitrust compliance work for their company. Plaintiffs contacted Morgan Lewis to alert the firm that they believed there existed a conflict and that Morgan Lewis should withdraw, and Morgan Lewis responded that it did not believe its prior work for Koch was "substantially related" to the instant litigation. (Mem. at 13–14.) Morgan Lewis further informed plaintiffs that Morgan Lewis had created an ethical screen between the Morgan Lewis attorneys who worked on the Koch antitrust compliance audits and the lawyers currently working on this case.[3] (*Id.* at 14.) Plaintiffs then raised the possibility of disqualification with the Court through a pre-motion conference, and we directed the parties to brief the issue. Following the conference and before formal briefing began, Kasowitz Benson entered an appearance on behalf of defendants, joining Morgan Lewis and Lynch Rowin as defendants' co-counsel of record.

Plaintiffs' motion argues that Morgan Lewis's work on the Koch antitrust compliance audit project gave the firm access to confidential, privileged information substantially related to the instant litigation. Plaintiffs argue that Kasowitz Benson and Lynch Rowin should likewise be disqualified because they have been tainted through their close collaboration with Morgan Lewis. In addition, plaintiffs contend that Kasowitz Benson has a "separate and independent conflict" based on certain conduct by Kasowitz Benson that plaintiffs say was adverse to them during the North Carolina MDL, and because of Kasowitz Benson's ongoing representation of certain Koch affiliates in the asbestos litigations

---

**3.** Morgan Lewis states that all but three of the ten Morgan Lewis personnel who worked on the audit have since left the firm, and of the three that remain, only one was significantly involved in the project. (Morgan Lewis Opp. at 12.) None of those still at the firm has or will be involved in the instant litigation, and all have now been formally screened. (*Id.*)

pursuant to indemnity tenders under the APA.

## DISCUSSION

### I. Morgan Lewis's Antitrust Compliance Audit of Koch

■ There is no dispute regarding the governing legal standard here. An attorney may be disqualified from representing a client in a particular case if: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983); *see also Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005).

■ Disqualification motions have long been generally disfavored in this Circuit because of their tendency to be made for tactical reasons and their potential to unduly interfere with a party's right to employ counsel of her choice. *See Evans*, 715 F.2d at 791–92 (a party seeking disqualification "bear[s] a heavy burden of proving facts required for disqualification"); *Skidmore v. Warburg Dillon Read, LLC*, 99 Civ. 10525(NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001). Indeed, "even when made with the best of faith," as we assume was the case here, disqualification motions inevitably entail delay. *See Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir.1978). Accordingly, there are "particularly trenchant reason[s] for requiring a high stan-

dard of proof" from one who moves to disqualify counsel. *Skidmore*, 2001 WL 504876, at *2. A district court deciding such a motion must give particularly detailed attention to the factual record. *See id.; U.S. Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1451 (S.D.N.Y. 1985). Disqualification is appropriate "only upon a showing that the relationship between issues in the prior and present cases is patently clear"—that is, "identical" or "essentially the same." *Gov't of India*, 569 F.2d at 739–40 (internal quotation marks omitted). The mere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion. Rather, the motion will be granted only if the facts present a real risk that the trial will be tainted. *See U.S. Football League*, 605 F.Supp. at 1452.

■ Based on these guiding principles, the question of whether disqualification is necessary in this case turns on whether the antitrust compliance audit conducted by Morgan Lewis dealt with issues "identical" or "essentially the same" as those in dispute in this lawsuit. We find that it did not.

We agree with Morgan Lewis that the issue being litigated here is, ultimately, whether illegal anticompetitive activity was occurring at the defendants' polyester business prior to defendants' sale of that business to KoSa in 1998. (Morgan Lewis Opp. at 1.) The Morgan Lewis audit that plaintiffs cite as the basis for their disqualification motion, however, took place in 2000 and 2001—two years after that transaction. Further, Morgan Lewis's audit of Koch and certain Koch affiliates did not include KoSa, which was the entity that actually purchased the polyester business that was the locus of the antitrust conspiracy.[4] (*Id.* at 6.) Instead, the audit report

---

4. Morgan Lewis notes that its audit also did

not extend to Arteva Specialties, the KoSa

indicates that Morgan Lewis recommended that Koch encourage KoSa to conduct its own antitrust audit and reflects Morgan Lewis's understanding that another law firm would be performing that audit. (*Id.* at 2.) The audit report is otherwise quite general, providing, for the most part, broad antitrust compliance advice and recommendations.[5] Further, the audit report makes no reference to the DOJ's antitrust investigation, and Morgan Lewis was not otherwise involved in that investigation. (*Id.*)

In response to these points, plaintiffs contend that Morgan Lewis's audit, although it occurred two years after the sale of the polyester business at issue, is still substantially related to this litigation because defendants have taken the positions that the antitrust conspiracy developed after the closing, and that any damages awarded should at least be reduced on the basis that plaintiffs are partially at fault. (Reply Memorandum of Law in Support of Plaintiffs' Motion to Disqualify at 3–4.)

Although the audit and the instant matter both relate to antitrust law, that appears to be the extent of their relationship. Close scrutiny of the final audit report and careful consideration of the parties' submissions leads us to conclude that there is no meaningful overlap between the scope of the audit project and this litigation, and as such, the Second Circuit's high threshold for disqualification is not met. Morgan Lewis's work for Koch was undertaken two years after the transaction that gave rise to this lawsuit and focused on corporate entities other than those at the heart of this case. The audit—based on both the report and the amount billed by Morgan Lewis—does not appear to have been particularly in depth, and no one seems to be seriously contending that the process made Morgan Lewis privy to some overarching Koch philosophy or strategy regarding antitrust compliance. Simply conducting an antitrust audit cannot itself be sufficient to disqualify a law firm from all future adverse representations that raise antitrust issues.

We therefore find that there is not a "substantial relationship" between the subject matter of Morgan Lewis's prior representation of Koch and the issues in the present lawsuit. Having concluded that Morgan Lewis need not be disqualified on the basis of this prior representation, we in turn find that Kasowitz Benson and Lynch Rowin were not "tainted" through their collaboration with Morgan Lewis, and likewise need not be disqualified.

Despite these findings, we do pause to note that the delay and expense of this motion might have been reduced—if not altogether avoided—had Morgan Lewis conducted the requisite conflict check at the time it was retained by defendants in this action, as is mandated under the New York Disciplinary Rules. Section 1200.10 of the Codes, Rules and Regulations of the State of New York clearly states:

> (e) A law firm shall make a written record of its engagements, at or near the time of each new engagement, and shall implement and maintain a system by which proposed engagements are checked against current and previous engagements when: (1) the firm agrees to represent a new client; (2) the firm agrees to represent an existing client in a new matter; (3) the firm hires or associates with another lawyer; or (4)

---

indirect subsidiary that owned and operated the polyester business at issue in this case. (Morgan Lewis Opp. at 6.)

**5.** At our request, plaintiffs tendered a copy of the audit report, of which we conducted an *in camera* review.

an additional party is named or appears in a pending matter.

(f) Substantial failure to keep records or to implement or maintain a conflict-checking system that complies with paragraph (e) shall be a violation thereof regardless of whether there is another violation of these Rules.

N.Y. Comp.Code R. & Regs. tit. 22, § 1200.10(e)-(f); *see also* DR 5–105(E).

It is undisputed that Morgan Lewis failed to comply with this rule when defendants hired the firm for this case. In fact, Morgan Lewis maintains that it became aware of the potential conflict and implemented screening measures only after being notified by plaintiffs' counsel. (Morgan Lewis Opp. at 12, 24.) This failure by Morgan Lewis to check for and identify possible conflicts at the beginning of a new representation is particularly troubling, given that Morgan Lewis was at least generally on notice of the potential for conflicts with its former client, Koch, because the company was also seeking its disqualification in another matter currently pending in the Southern District.[6] In addition, in 2003 Morgan Lewis had sought a conflict waiver to represent a former KoSa customer in a separate antitrust lawsuit related to the 1998 polyester business sale, and Koch's general counsel had refused. (Mem. at 6–7.) The inconsistency between seeking (and being denied) a conflict waiver in 2003 and proceeding with an adverse representation without notifying Koch just five years later is difficult to reconcile. If, indeed, this contradictory behavior was simply the result of a breakdown in Morgan Lewis conflict check procedures, then Morgan Lewis would do well to examine those procedures carefully and immediately, lest future disqualification motions made against it end less favorably.

## II. Kasowitz Benson's Representation

Plaintiffs also seek to disqualify Kasowitz Benson on a separate ground, arguing that the firm has breached its duty of loyalty to plaintiffs. Plaintiffs cite two bases for this contention: first, that while it was representing Koch affiliate Georgia–Pacific in asbestos litigation, Kasowitz Benson, in the course of representing defendants in the North Carolina MDL, submitted trial graphics and briefing adverse to Koch's position there (Mem. at 10, 23–25); and second, that Kasowitz Benson continues to represent KoSa and INVISTA in other asbestos litigations pursuant to indemnity tenders under the APA while representing defendants in this case (Mem. at 23–24; Kasowitz Benson Opp. at 1).

We agree with Kasowitz Benson that neither of these is sufficient grounds for disqualification. Plaintiffs have not clearly articulated any breach of loyalty arising from Kasowitz Benson's conduct in the North Carolina MDL that would provide a basis for disqualification. Further, with respect to Kasowitz Benson's ongoing representation of KoSa and INVISTA pursuant to the indemnity tenders, we agree with Kasowitz Benson that Celanese is the real party in interest, making Kasowitz Benson's representation of defendants in this case permissible—particularly given that plaintiffs expressly waived any conflict resulting from Kasowitz Benson's representation of Celanese when they entered into a joint defense agreement in conjunction with the APA. (Kasowitz Benson Opp. at 6–7, 22.)

---

**6.** On March 30, 2009, Judge Stein issued an oral ruling denying a Koch affiliate's motion to disqualify Morgan Lewis, finding that the Koch affiliate also had failed to make the requite "substantial relationship" showing. *See INVISTA B.V., et al. v. E.I. Du Pont de Nemours and Co.,* 08 Civ. 3063 (SHS).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to disqualify defense counsel is denied in its entirety. The parties are hereby directed to submit a joint status letter within the next ten days setting forth a proposed schedule to complete discovery and initiate briefing on dispositive motions.

**IT IS SO ORDERED.**