NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0320-21

DENTAL HEALTH
ASSOCIATES SOUTH
JERSEY, P.A., PG DENTAL
MANAGEMENT II LLC,
and DR. AMISH PATEL,

      Plaintiffs-Appellants,

v.

RRI GIBBSBORO, LLC,
SCOTT SINGER, and TODD
SINGER, SAMANTHA WOLFF,
DENTAL OF CLEMENTON,
LLC, and JAMES MARMO,

      Defendants-Respondents.

_____

APPROVED FOR PUBLICATION

March 10, 2022

APPELLATE DIVISION

Argued March 3, 2022 – Decided March 10, 2022

Before Judges Alvarez, Haas, and Mawla.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3993-20.

Ellis I. Medoway argued the cause for appellants Dental Health Associates South Jersey, PA, PG Dental Management II LLC, and Dr. Amish Patel (Archer & Greiner, PC, attorneys; Ellis I. Medoway, on the briefs).

Elliot D. Ostrove argued the cause for respondents RRI Gibbsboro, LLC, Scott Singer and Todd Singer (Epstein Ostrove, LLC, attorneys; Elliott D. Ostrove, of counsel and on the brief; Maureen C. Pavely, on the brief).

The opinion of the court was delivered by

MAWLA, J.A.D.

We granted plaintiffs Dental Health Associates South Jersey, P.A., PG Dental Management II, LLC, and Dr. Amish Patel leave to appeal from an August 6, 2021 order disqualifying the law firm of Archer & Greiner, PC (Archer) from serving as their counsel. We reverse and remand for further proceedings consistent with this opinion.

Plaintiffs initiated this lawsuit in June 2020 alleging they executed an asset purchase agreement with sellers, who were not party to the litigation, to purchase dental practices, including patient records and dental equipment. Pursuant to the purchase agreement, the sellers assigned their leases for multiple office locations, including a Clementon office operated by defendants RRI Gibbsboro, LLC, Scott Singer, and Todd Singer. Following the agreement's execution, plaintiffs alleged defendants locked them out of the Clementon office, wrongfully converted the equipment and patient records, and sought an injunction prohibiting defendants from blocking access to the premises.

A-0320-21

A few weeks after filing the complaint, plaintiffs retained Archer and its partner Kerri E. Chewning as their new counsel. Chewning filed a first amended complaint in June 2020 and a second amended complaint in September 2020. Plaintiffs asserted the following claims against defendants: conversion; tortious interference with contract and/or business expectancy; breach of contract; violation of the New Jersey Law Against Discrimination; and defamation.

The complaints' introduction referenced an unrelated 2015 litigation involving defendants in New York, to which plaintiffs were not a party. Before addressing the import of the introduction in plaintiffs' complaint, we explain the background of the New York litigation.

The New York case involved a lawsuit filed by a "control fund" that entered into an asset purchase agreement with the Singers to purchase an equity stake in a marketing and human resources company the Singers owned that provided non-clinical services to dental practices owned by Todd.[1] Pursuant to the agreement, Scott would be named CEO of company, Todd remained owner of the dental practices and would be named president and chief clinical officer of the company, and both would draw salaries under their employment contracts.

---

[1] We use first names because Todd and Scott share the same surname. We intend no disrespect.

A-0320-21

A dispute arose following the closing and the Singers sought to terminate the service contracts between the company and the practices.

The New York plaintiffs filed a complaint alleging: fraudulent inducement of the acquisition agreement seeking monetary damages and specific performance; breach of the acquisition agreement, monetary damages, and specific performance; breach of the acquisition agreement's restrictive covenants; breach of the covenant of good faith and fair dealing; breach of fiduciary duty; unjust enrichment; and conversion. The New York plaintiffs sought a temporary restraining order (TRO) against the Singers for violating the agreement's restrictive covenants, including a prohibition on soliciting employees and a non-compete clause. Following entry of the TRO, the New York trial court had to determine whether to enforce the acquisition agreement's restrictive covenants and convert the TRO to a preliminary injunction. The Singers opposed a preliminary injunction arguing the restrictive covenants were illegal and contrary to public policy. The court rejected the public policy argument and granted the preliminary injunction.

The Singers and their related entities in the New York litigation retained the law firm of Tarter, Krinsky & Drogin, LLP to represent them in the appeal from the preliminary injunction. Anthony D. Dougherty, then a partner at the

A-0320-21

firm, handled the appeal and was involved in the matter from December 2015 until September 2017 when the litigation settled and was dismissed.

With this as the background, we turn to paragraph ten of the complaint Archer filed here, which read as follows:

> In an [eighteen]-page [d]ecision . . . from a case strikingly similar to the one now before this [c]ourt, [the New York court] had this to say about the Singer brothers when entering an injunction against them:
>
> . . . .
>
> The equities . . . do not lie with defendants [the Singer brothers], who brazenly and unapologetically crippled the [New York plaintiff's c]ompany by stealing the [e]mployees and competing . . . in direct contravention of . . . the [a]cquisition [a]greement.
>
> ***
>
> [The Singers'] notion that this case presents a public health concern or that patients . . . stand to see their dental care adversely impacted is nothing more than a conclusory scare tactic proffered by the Singers.
>
> ***
>
> Under these circumstances, it is clear the Singers seek to invoke "public policy as a sword for personal gain rather than a shield for the public good."

5

[(fifth and tenth alterations in original).]

In December 2020, defendants filed an answer and counterclaim claiming "[t]he allegations contained in [p]aragraph [ten] . . . are non-factual arguments and/or conclusions of law, for which no response is required." The answer further asserted the paragraph should be stricken pursuant to Rule 4:6-4(b) and denied the allegations, noting the New York decision was interlocutory.

Dougherty joined Archer as a partner in January 2021. On June 28, 2021, Scott sent Dougherty an email congratulating him on the move to Archer. Defendants' counsel then contacted Chewning asserting a conflict of interest given Dougherty's prior representation of the Singers and their entities in the New York matter and demanded Archer withdraw as plaintiffs' counsel. Defendants subsequently filed the disqualification motion.

Scott certified he retained Dougherty in 2015 to represent him, his brother, and their related entities in the New York litigation. He stated Dougherty represented other entities related to him and his brother and most recently represented him in an arbitration in August 2019. He alleged Dougherty had knowledge of the trial strategy and defenses in the New York matter and "obtained confidential information about the Singer [d]efendants and . . . the defenses . . . they now assert in the pending matter." His certification attached

billing statements showing Dougherty's activity. He stated: "Dougherty learned about our finances, habits, methodologies, personality, and other personal information concerning me, Todd, and our businesses." Defendants noted Archer did not advise them Dougherty joined the firm as mandated under RPC 1.10(c)(3).

Chewning and Dougherty each filed a certification in opposition to the motion recounting their respective involvement. Each certified they worked in different Archer offices and had never met, let alone spoken with each other about defendants or their cases. Chewning certified when she received the letter from defendant's counsel alleging the conflict, she contacted Archer's general and assistant general counsel to handle the matter. Dougherty's certification stated his access to Archer's file was restricted by the firm after defendants' counsel wrote to Chewning. The firm's assistant general counsel also submitted a certification confirming he had Dougherty "screened from the present matter."

At oral argument, defendants' counsel argued the strategies and "defenses raised by the Singer defendants in this matter with respect to an illegally or improperly constituted entity for the provision of dental services was the same defense that was raised in the New York matter." Counsel asserted "the similarity between the two matters is necessarily established by plaintiff's

7

admission" via their sworn statements where they "declare that the New York matter is . . . 'strikingly similar' to the one now before this [c]ourt."

Plaintiffs' counsel noted the first amended verified complaint containing the "strikingly similar" language was filed six months before Dougherty joined Archer and did not constitute an admission the two cases were alike. And even if it did, the court had to apply the Trupos[2] standard and determine whether the matters were substantially related. Counsel argued the matters were not substantially related because the two cases were litigated in separate jurisdictions and involved different causes of action and law.

The motion judge granted the disqualification and issued a written opinion. He concluded disqualification was required under RPC 1.10(b), reasoning:

> Plaintiff[s'] complaint . . . on its face establishes the existence of [the] conflict. . . . Dougherty, while representing defendants in [the] New York litigation, signed papers as the lead attorney . . . . Plaintiff's original complaint as well as the two amended verified complaints rely upon the New York decision . . . as relevant to establishing improper business tactics by defendants in this case. . . . Dougherty would possess confidential information relating to the New York litigation upon which plaintiffs here rely upon to the detriment of defendant[s].

---

[2] City of Atlantic City v. Trupos, 201 N.J. 447 (2010).

. . . [P]laintiffs are judicially estopped from trying to distance themselves from clear and unambiguous allegations contained in both the original complaint and the second amended complaint.

## I.

"Disqualification of counsel is a harsh discretionary remedy which must be used sparingly." Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 572 (App. Div. 2000). "[A] motion for disqualification calls for [the court] to balance competing interests, weighing the 'need to maintain the highest standards of the profession' against a 'client's right freely to choose his [or her] counsel.'" Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 218 (1988) (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)). Courts must engage in a "painstaking analysis of the facts." Id. at 205 (quoting Reardon v. Marlayne Inc., 83 N.J. 460, 469 (1980)). Our review is de novo. Trupos, 201 N.J. at 463.

## II.

Plaintiffs argue defendants did not meet their burden to demonstrate the New York litigation was substantially related to the present matter, and the motion judge failed to analyze the facts and found the matters were substantially related relying on one unproven allegation in the complaint. They assert the judge assumed Chewning obtained confidential information from Dougherty

9

even though they never met, and the allegations raised in the complaint were asserted prior to Dougherty joining Archer. They further point out the motion judge incorrectly relied on RPC 1.10(b), which does not apply unless the lawyer is disqualified under RPC 1.9.

Plaintiffs argue if the judge applied Trupos, he would have concluded there was no conflict of interest because the cases were different. The New York litigation concerned an acquisition agreement's restrictive covenants containing anti-solicitation and non-compete provisions, whereas this matter involves a lease agreement and dispute over access to a dental office, records, and equipment. Plaintiffs also point out the discrimination claims raised here were not part of the New York litigation. They argue judicial estoppel does not apply because there was no final adjudication in either case.

RPC 1.9(a) prohibits a lawyer who formerly represented a client from representing another client "in the same or a substantially related matter in which that client's interests are materially adverse" to the former client's interests unless the former client provides written informed consent. Additionally, RPC 1.9(c) prohibits a lawyer from using or revealing information relating to a former client's representation to the former client's disadvantage. RPC 1.9 is strictly construed because "[i]f there be any doubt as to the propriety of an attorney's

representation of a client, such doubt must be resolved in favor of disqualification." Herbert v. Haytaian, 292 N.J. Super. 426, 438-39 (App. Div. 1996) (alteration in original) (quoting Reardon, 83 N.J. at 471). The party who seeks the disqualification bears the burden of persuasion. Trupos, 201 N.J. at 462.

In Trupos, the Supreme Court enumerated a two-part test to analyze disqualification under RPC 1.9 and held matters are "substantially related" if:

> (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.
>
> [Id. at 467.]

These factors require a "fact-sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories, governs whether an attorney ethically may act adverse to a former client." Ibid.

In determining whether two matters are substantially related the analysis "turn[s] on the identification of any particular confidence[s] having been revealed." Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 278 (2012). To demonstrate a lawyer received confidential information from

the prior relationship, the client must make more than "bald and unsubstantiated assertions" that the lawyer disclosed "business, financial and legal information" related to the matter for which disqualification is sought. O Builders & Assocs., Inc. v. Yuna Corp. of N.J., 206 N.J. 109, 129 (2011).

The motion judge did not conduct the fact-sensitive analysis required by Trupos. Instead, he accepted defendants' argument the New York litigation and this matter were substantially related on an unproven allegation in plaintiffs' complaint. Plaintiffs' opposition to the disqualification motion detailed several ways in which the cases were different, but the judge did not examine those arguments beyond the surface of the complaint. A more thorough analysis of the facts was required. For example, the judge concluded "Dougherty would possess confidential information relating to the New York litigation upon which plaintiffs here rely upon to the detriment of defendant" without explaining what the confidential information was. The record does not disclose what, if any, confidential information or strategies Dougherty shared with Chewning. The judge did not address the fact the first amended complaint was filed in this matter before Dougherty ever joined the firm.

The record also lacks fact findings regarding the second Trupos prong. In this regard, the judge did not address the fact the New York case and this case

concern different parties, subject matter, causes of action, and law, which would undermine the notion the matters are substantially related.

Furthermore, judicial estoppel was inapplicable because the doctrine applies when a party takes inconsistent positions in separate proceedings Cummings v. Bahr, 295 N.J. Super. 374, 387 (App. Div. 1996); see also Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606-07 (App. Div. 2000).  Plaintiffs were not a party to the New York matter.

Assuming the judge intended to invoke equitable estoppel, we remain unconvinced.  Equitable estoppel is intended to "prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment."  Knorr v. Smeal, 178 N.J. 169, 178 (2003).  "[T]o establish equitable estoppel, plaintiffs must show that [a party] engaged in conduct, either intentionally or under circumstances that induced reliance, and that [the other party] acted or changed their position to their detriment."  Ibid.

This case was in the initial pleadings stage and the record does not support the conclusion the allegations in the complaint induced reliance by or caused defendants to change their position to their detriment requiring the imposition of equitable estoppel to prevent an injustice.  Defendants' denial of the

13

allegations in paragraph ten of the complaint would be consistent with their defense.

For these reasons, we remand for further fact finding by the motion judge. If the judge finds there are insufficient facts to make a determination, he should order discovery and if necessary, hold a plenary hearing to develop the record before deciding the disqualification motion.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0320-21